### HOLLY v. CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department. November 6, 1908.)

1. MUNICIPAL CORPORATIONS (§ 330*) — CONTRACTS — PUBLIC IMPROVEMENTS— STATUTES—CONSTRUCTION—"PATENTED ARTICLE."

An unpatented lock-bar joint pipe, made in this country only by patented machinery, is not a "patented article," within Greater New York Charter (Laws 1901, p. 642, c. 466) § 1554, providing that no patented article shall be advertised for or purchased except under such circumstances that there can be a fair and reasonable opportunity for competition, the conditions of which shall be provided by the board of estimate and apportionment.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 330.*]

2. MUNICIPAL CORPORATIONS (§ 331*)—CONTRACTS FOR PUBLIC IMPROVEMENT— VALIDITY.

Where the estimates for the various styles of pipe for the construction of a steel pipe line submitted to the competition of bidders were made strictly in accordance with engineering standards, there was no unjust discrimination on the ground that an excessively high estimate was placed on the efficiency of a certain style of pipe, so that the thickness of the plates for that style was not required to be as great as that of other styles permitted, and was exactly that of the plates manufactured by a corporation as a licensee of the successful bidder.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 857; Dec. Dig. § 331.*]

3. MUNICIPAL CORPORATIONS (§ 336*)—CONTRACTS FOR PUBLIC IMPROVEMENTS— VALIDITY.

Where a city, contracting for the construction of a steel pipe line, awarded the contract to the lowest bidder, a taxpayer could not complain because the bidder would make a larger profit than a higher bidder for another style of pipe would have made.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 862; Dec. Dig. § 336.*]

4. MUNICIPAL CORPORATIONS (§ 331*)—CONTRACTS FOR PUBLIC IMPROVEMENTS —VALIDITY.

Where each bidder for a public improvement is given an opportunity for fair competition, the bidders are on equal terms.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 331.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. CONSTITUTIONAL LAW (§ 72*)—ACTION OF ADMINISTRATIVE OFFICIALS—JU-
   DICIAL REVIEW.
      The courts, as a general rule, will not interfere with the exercise of
   the discretion vested by statute in administrative officials, in the absence
   of convincing proof of improper conduct on their part, or unless the pow-
   ers conferred on them have been clearly transgressed.
      [Ed. Note.—For other cases, see Constitutional Law, Dec. Dig. § 72.*]

6. MUNICIPAL CORPORATIONS (§ 336*) — PUBLIC IMPROVEMENT CONTRACTS —
   AWARD—JUDICIAL REVIEW.
      Where a contract has been awarded for a public improvement for a
   city, the court will not interfere with its performance, unless its illegality
   is clearly established, and the discretion of the city officials in selecting
   the lowest bidder ought not to be interfered with.
      [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §
   862; Dec. Dig. § 336.*]

Appeal from Special Term.

Action by Willis Holly against the city of New York and others.
From an order granting an injunction pendente lite, defendants ap-
peal. Reversed.

Argued before INGRAHAM, McLAUGHLIN, CLARKE,
HOUGHTON, and SCOTT, JJ.

Theodore Connoly, for appellant city of New York.
Paul D. Cravath and Chase Mellen, for appellant T. A. Gillespie Co.
G. H. D. Foster, for respondent.

McLAUGHLIN, J. This appeal is from an order restraining the
defendants during the pendency of the action from carrying out a
certain contract for laying a steel pipe line from Valley Stream to
Amityville, L. I., a distance of 16 miles. The city, through its proper
officers, advertised for bids for the construction of this line. The pipe
was required to be 72 inches inside diameter and one of four different
types, designated as "A," "B," "C," and "D," depending upon the
method by which the plates were joined; the first three being forms
of riveted joint, and the fourth a lock-bar joint. The contract was
awarded to the appellant the T. A. Gillespie Company, the lowest
bidder, upon a bid of $1,879,390 for type "D" pipe; the next lowest
bidder being $1,909,052 for type "A" pipe.

This action was brought by a taxpayer, in which he seeks to pro-
cure a judgment declaring the acts of the officers of the city in ad-
vertising and receiving bids for type "D" pipe illegal and void, re-
straining them from accepting the bid of the T. A. Gillespie Company,
and enjoining the defendants from carrying out the contract in any
way. The action is based upon section 1554 of the Greater New York
charter (Laws 1901, p. 642, c. 466), which provides:

"Except for repairs no patented pavement shall be laid and no patented
articles shall be advertised for, contracted for or purchased, except under
such circumstances that there can be a fair and reasonable opportunity for
competition, the conditions to secure which shall be prescribed by the board
of estimate and apportionment."

It is urged that type "D," or lock-bar joint, pipe is a patented arti-
cle, and the conditions to secure competition in bids were not prescrib-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ed by the board of estimate and apportionment, and therefore, if the contract be entered into and carried out, the same will constitute an illegal act, and the moneys expended a waste of public funds. Type "D," or lock-bar joint, pipe differs from the other types in that no rivets are used in joining the plates which compose the pipe. The edges of the plates are enlarged, and an "H" bar clamped over them. This style of pipe is not patented; but it appears that the only machines in use in this country for thickening the edges of the plates and for clamping the "H" bar over them, are patented machines, the right to use which for making pipe 30 inches or over in diameter is held by the T. A. Gillespie Company, and that the only company making such pipe in this country is the East Jersey Pipe Company, its licensee, of which it is a large stockholder. Lock-bar joint pipe, though made by patented machinery, cannot be said to be a patented article within the meaning of the section of the charter above quoted, and, that being so, the fact that the board of estimate and apportionment did not prescribe the conditions for the bids is immaterial.

The only remaining question necessary for consideration is whether an opportunity was afforded for fair competition. If not, or if unjust discrimination were shown the T. A. Gillespie Company, then the plaintiff would be entitled to the relief sought. What is claimed by the plaintiff in this respect is that an excessively high estimate was placed upon the efficiency of the lock-bar joint, so that thinner plates could be used for that style of pipe, and that the thickness of the plates for that style, under the specifications, was exactly that of the plates manufactured by the East Jersey Pipe Company. The affidavits presented in opposition to the motion fairly tend to establish, however, that the estimates for the various styles of pipe were made strictly in accordance with engineering standards, which fact I do not understand is disputed.

But it is further urged in this connection that this saving in metal gave the Gillespie Company a large advantage over its competitors, so that its bid represents a much greater profit and less actual value to the city. All that concerns the city is to have suitable pipe laid at the lowest possible cost, and it is difficult to see why a taxpayer should wish the lowest bid thrown out because the bidder would have a larger profit than a higher bidder.

Our attention has been called to certain cases which it is claimed hold that articles made with patented machinery fall within the prohibition of section 1554. There are, doubtless, expressions in some of the opinions delivered in the cases referred to to this effect; but the Court of Appeals seems to have finally settled the question adversely to the plaintiff's contention, in so far as he claims that an opportunity was not afforded for fair competition. Warren Bros. Co. v. City of New York, 190 N. Y. 297, 83 N. E. 59. So that, granting all that the plaintiff claims, that the Gillespie Company was the only one who could bid on type "D" pipe by reason of its control of the machinery for its manufacture, I am of the opinion that the conditions of the bids were such as to afford a fair and reasonable opportunity for competition. Bids were advertised for four types of pipe on what we can only conclude were equal terms, and if it be assumed that type "D"

was a patented article and the subject of a monopoly, the conditions were similar to those approved by the court in the case just cited, except that the conditions were not prescribed by the board of estimate and apportionment, which I do not think enters into the question in the present case, for the reasons already stated. That case related to bids for patented pavements, and the court said:

"The dictates of public policy, under the circumstances here presented, would seem to require that the owners should bid on equal terms. It may well be, in this age of invention and progress, that the wit of man may devise, if it has not already, a smooth and noiseless pavement that is cheaper and more enduring than any now in use. If this proves to be the fact, there is no reason why the inventor and the city should not profit by this situation."

It is not possible to force the holder of a patent to assign rights to others, so that they may bid against each other. That is not what is meant by bidding on equal terms, for otherwise there could be no equal terms. All that is necessary is to afford to each bidder an opportunity for fair competition, and this appears to have been done in the present case. The city officials having in charge the letting of the contract, in the exercise of the discretion vested in them, selected the lowest bidder, and their discretion ought not to be interfered with. It is a general rule that courts will not interfere with the exercise of the discretion vested by statute in administrative officials, in the absence of clear and convincing proof of improper conduct on their part, or unless the powers conferred upon them are clearly transgressed. East River Gaslight Co. v. Donnelly, 93 N. Y. 557; Brady v. Mayor, 112 N. Y. 480, 20 N. E. 390, 2 L. R. A. 751; Paul v. City of New York, 46 App. Div. 69, 61 N. Y. Supp. 570. And, where a contract has been awarded for a public improvement, the court will not interfere with its performance, unless its illegality is clearly established. Gage v. City of New York, 110 App. Div. 403, 97 N. Y. Supp. 157.

The moving papers fail to establish even a prima facie case, and for that reason the injunction should be vacated, and the city left free to carry out the contract awarded to the T. A. Gillespie Company.

The order appealed from is reversed, with $10 costs and disbursements to each appellant appearing by separate counsel, and the motion for an injunction denied, with $10 costs to the same parties. All concur.