In the Matter of the Application of SAMUEL NALORE, Appellant, for an Order of Mandamus against HAROLD W. BAKER, as City Manager of the City of Rochester, and Others, Respondents.

Fourth Department, May 15, 1935.

*H. H. Cohen*, for the appellant.

*Harold P. Burke, Corporation Counsel [Charles B. Forsyth, Deputy Corporation Counsel*, of counsel], for the respondents.

LEWIS, J. The petitioner is an honorably-discharged World war veteran who, from May 9, 1932, until January 5, 1934, was employed by the city of Rochester in various positions, the last of which was inspector in charge of subway maintenance. His work was classified in civil service as that of a skilled laborer. On January 5, 1934, the respondent commissioner of public works gave notice that petitioner's position had been abolished and that his services would not be required longer. Thereupon petitioner demanded that respondents arrange for his retention in service in accord with the preferential rights which he claimed as a veteran under section 22 of the Civil Service Law. Failing in this demand, he instituted this mandamus proceeding by which he seeks reinstatement to the position from which he was dismissed or that he be transferred to such a position as he may be fitted to fill and affording the same compensation as the one in which he was last employed by the city.

In support of his demand the petitioner alleges that he was discharged without a hearing; that his dismissal was not accomplished in good faith; and that although numerous vacancies have occurred since his discharge in positions which he was fitted to fill, the compensation of which was equal in amount to that which he formerly received, the respondents have refused to transfer or appoint him to such a position.

As the answering affidavits served by respondents presented issues of fact, an alternative mandamus order followed. Upon the trial of the issues thus presented there was evidence that on October 14, 1927, following his plea of guilty, the petitioner had been convicted of criminally receiving stolen property and was thereupon sentenced to Auburn State Prison for a term of from three to six years. The proof indicates that sentence was pronounced but its execution was suspended pending restitution by the petitioner. It also appears that after a period of parole of less than five years, during which time the petitioner made complete restitution, he was discharged on December 31, 1931. The record does not disclose that petitioner's dismissal on January 5, 1934, was in any way related to his previous conviction. In fact that conviction

was first mentioned in the course of his cross-examination upon the trial of issues of fact under the alternative mandamus order.' The appeal now before us is from the judgment entered upon the order granting respondents' motion for the direction of a verdict and the dismissal of the alternative mandamus order which motion was based upon proof of petitioner's conviction of a crime.

In support of the judgment the respondents contend that the petitioner's conviction and his sentence to a State prison suspended the civil rights to which he would otherwise have been entitled including the preferential right to retention in service which he now invokes as a veteran under section 22 of the Civil Service Law. The argument rests upon the provisions of section 510 of the Penal Law, as to which it is to be noted that the suspension of civil rights thereby provided is only " during the term of the sentence " in a State prison. As the maximum term of petitioner's sentence of " from three to six years " concededly expired October 14, 1933, his civil rights on January 5, 1934, the date of his dismissal, were not suspended by the statute.

We, therefore, pass to a consideration of respondents' further contention that petitioner's conviction, which is now a matter of record in this proceeding, constitutes a complete bar, as a matter of law, to his employment in civil service by the city of Rochester. It is said that such prohibition is to be found in rule XX of the local Municipal Civil Service Rules which provides:

" Candidates unfit for appointment. Blank forms for applications will be furnished by the said municipal civil service commission without charge to all persons requesting the same. The commission may require in connection with such application such certificates of citizens, physicians, public officers and others having knowledge of the applicant, as the good of the service may require. The commission *may* refuse to examine an applicant, or after examination to certify an eligible, who is found to lack any of the established preliminary requirements for the examination or position for which he applies; or who is physically so disabled as to be rendered unfit for the performance of the duties of the position to which he seeks appointment; or who is addicted to the habitual use of intoxicating beverages to excess; or *who has been guilty of a crime,* or of infamous or notoriously disgraceful conduct; or who has been dismissed from the public service for delinquency or misconduct; or who has intentionally made a false statement of any material fact, or practiced or attempted to practice, any deception or fraud in his application, in his examination, or in securing his eligibility or appointment. Any of the foregoing disqualifications shall be a good cause for the removal of an eligible from the service after his appointment."

We do not interpret this rule as a mandatory prohibition which, under all circumstances, will prevent one " who has been guilty of a crime " from being eligible for appointment to civil service. Rather does it endow the commission with discretion to be exercised in the light of all available information bearing upon the applicant's fitness for employment. Prior criminal guilt is but one cause, among others mentioned in the rule, which " *may* " prompt the commission as an administrative board to refuse to examine an applicant. It is fair to assume that such an applicant would be refused only in the event his moral qualities at the time of his application, when considered in their relation to the employment he seeks, would warrant such refusal. To interpret the rule otherwise would disqualify for civil service every applicant who has been guilty of a crime regardless of the duties of the position to be filled or the nature of the crime previously committed; it would disregard both the possibility and the hope of moral reformation.

Had those who framed the municipal civil service rule under discussion intended to establish an absolute disqualification in the case of an applicant who had been found guilty of a crime, we believe they would have employed language clearly indicating such intent. For example, we find a wide and significant difference between the language of the rule under consideration and section 327 of the Charter of the City of Rochester (Laws of 1907, chap. 755) which provides in part: " § 327. No person may be appointed to membership in the police or fire force, * * * who has ever been convicted of any crime." The language in the statute last quoted leaves no doubt that the prohibition there provided is not discretionary.

In the absence of a mandatory statute or rule which clearly forbids the employment in civil service of one who has been convicted of a crime, we are not willing to adopt the interpretation for which the respondents contend which we believe would unreasonably handicap an erstwhile offender in his effort to rehabilitate himself. We cannot add to the scope of rule XX of the Municipal Civil Service Rules under the guise of judicial interpretation. (*Tompkins* v. *Hunter*, 149 N. Y. 117, 122, 123; *City of New York* v. *Whitridge*, 227 id. 180, 183; *Glennie* v. *Falls Equipment Co., Inc.*, 238 App. Div. 7, 11.)

Finally, we are not in accord with respondents' claim that by failing to disclose his previous conviction the petitioner was guilty of fraud in his application for appointment. The blank form, known as a " qualifying certificate " which was completed and signed by the petitioner when he applied for employment in 1932 and entered the city's service, is a matter of record before us.

Although it lists thirteen carefully prepared questions, not one of them can be construed as demanding information from the applicant as to whether he had ever been convicted of a crime. Under such circumstances there was no affirmative duty upon the petitioner to disclose his previous conviction which we now hold was not a mandatory disqualification for appointment to civil service.

We conclude that the question whether petitioner's conviction of a crime in 1927 disqualifies him for civil service employment in the city of Rochester is a matter for determination by the local civil service commission, in the exercise of its administrative discretion, with all relevant facts before it for consideration. Our courts may not interfere with the exercise of discretion vested by statute in administrative officers in the absence of clear and convincing proof of improper conduct on their part. (*Brady* v. *Mayor, etc., of New York*, 112 N. Y. 480, 484; *Campbell* v. *City of New York*, 244 id. 317, 328; *Holly* v. *City of New York*, 128 App. Div. 499, 502.)

The judgment from which appeal is taken should be reversed on the law and a new trial granted of those issues of fact presented by respondents' return, with costs to the appellant to abide the event.

All concur, except THOMPSON, J., who dissents and votes for affirmance. Present — SEARS, P, J., EDGCOMB, THOMPSON, CROSBY and LEWIS, JJ.

Judgment reversed on the law and a new trial granted, with costs to the appellant to abide the event.